# IN THE COURT OF APPEALS OF IOWA

No. 17-0528
Filed July 19, 2017

**IN THE INTEREST OF A.B.,**
**Minor Child,**

**A.D., Mother,**
　　　Appellant,

**J.B., Father,**
　　　Appellant.

_____

Appeal from the Iowa District Court for Polk County, Joseph W. Seidlin, District Associate Judge.

A mother and father appeal separately from the juvenile court's order terminating their parental rights. **AFFIRMED ON BOTH APPEALS.**

Lori M. Holm of Holm Law Office, West Des Moines, for appellant mother.

John C. Audlehelm of Audlehelm Law Office, Des Moines, for appellant father.

Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee State.

Erin E. Mayfield of the Youth Law Center, Des Moines, attorney and guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**MULLINS, Judge.**

A mother and father appeal separately from the juvenile court's order terminating their parental rights to their child. Both argue the State failed to prove the statutory grounds for termination by clear and convincing evidence and an exception to termination exists due to their close bond with their child. The mother additionally argues termination is contrary to A.B.'s best interests and the juvenile court should not have terminated her parental rights because the child is placed with a relative. Upon our de novo review, we affirm both appeals.

I.      **Background Facts and Proceedings**

The mother and father have one child, A.B., born in 2015. The family came to the attention of the Iowa Department of Human Services (DHS) in February 2016, due to the parents' mental-health issues and use of methamphetamine while caring for their child. The parents consented to the temporary removal of the child, and the court ordered the child be placed with the paternal grandmother. That same month, the State filed a child-in-need-of-assistance (CINA) petition. The court held an uncontested hearing in April 2016 and adjudicated the child CINA under Iowa Code section 232.2(6)(c)(2) and 232.2(6)(n) (2016).

In May, the court entered a dispositional order confirming the adjudication and continuing placement of the child with the paternal grandmother. The court also adopted a case permanency plan outlining several requirements for both parents to satisfy in order to have A.B. returned to their care. The plan provided "both parents need to adequately address their mental health and substance abuse concerns and demonstrate a period of sobriety as well as insight into how

substance use affects their ability to parent." The court-adopted plan also specified the parents were to participate in individual therapy, substance-abuse treatment, drug screening, and other family services.

The court held a permanency hearing in September, after which the court granted the parents an additional six months to work toward reunification with their child. The court required each parent to "participate fully in services[,] . . . abstain from use of illegal substances," and further required "[the] mother obtain a new substance abuse evaluation and follow recommendations." A sweat patch drug screen was administered to the mother immediately following the permanency hearing, which resulted in a positive test for methamphetamine. The mother did not obtain a new substance-abuse evaluation until early January 2017—nearly four months later—because she was recovering from a medical procedure.

The record shows the father continued to use methamphetamine throughout the CINA case and only occasionally attended therapy appointments. He tested positive for methamphetamine as recent as January 2017, just a week before the combined permanency review and termination hearing began. The mother testified she did not know about the father's continued methamphetamine use until he disclosed it at a family meeting in December 2016.

The court and DHS also expressed concerns throughout the case regarding the parents' struggles with mental-health issues. In fact, one of the main factors contributing to the child's removal was the mother's attempted suicide by prescription overdose while the child was in her care. At the termination hearing, the father acknowledged his substance abuse directly

4

related to his stress and depression. Both parents have participated in some mental-health therapy, but neither has attended therapy consistently or fully complied with the recommended services.

Furthermore, the mother and father's ongoing relationship concerned the juvenile court throughout the proceedings. In order to address its concern with the parents' relationship, the court's permanency order included a requirement that the mother "demonstrate the ability to be protective of the child regarding [the] father's contact with [the] child should she remain substance free and the father does not." On the last date of the termination hearing, the mother informed the court for the first time that she and the father had ended their relationship one week prior.

In December 2016, the State petitioned the court to terminate the parental rights of the mother and the father pursuant to Iowa Code section 232.116(1)(h) and (*l*). The court held a hearing on the petition in February 2017 and concluded termination was proper under section 232.116(1)(h). The court found the State had proved by clear and convincing evidence A.B. could not be returned to the custody of either parent due to the parents' continued use of illegal substances and inability to exercise a reasonable degree of care with the child. The court further found that returning A.B. to either the mother's or the father's custody would subject the child to instability and uncertainty and that termination was in A.B.'s best interests. Finally, the court found none of the exceptions under section 232.116(3) applied to preclude termination in this case. Accordingly, the juvenile court terminated the mother's and the father's parental rights.

The mother and father now separately appeal.

## II. Standard of Review

We review termination-of-parental-rights proceedings de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). "We are not bound by the juvenile court's findings of fact, but give them weight, especially in assessing the credibility of witnesses." *Id.* (quoting *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014)). We may affirm the order on any statutory grounds supported by clear and convincing evidence. *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). "Evidence is considered clear and convincing 'when there are no "serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence."'" *In re M.W.*, 876 N.W.2d at 219 (alteration in original). Our primary consideration is the best interests of the child. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

## III. Analysis

"Our review of termination of parental rights under Iowa Code chapter 232 is a three-step analysis." *In re M.W.*, 876 N.W.2d at 219. First we must determine whether the State established the statutory grounds for termination by clear and convincing evidence. *See* Iowa Code § 232.116(1); *In re M.W.*, 876 N.W.2d at 219. Second, if the statutory grounds for termination are established, we consider whether termination is in the child's best interests under section 232.116(2). *See In re M.W.*, 876 N.W.2d at 219–20. Finally, we consider whether any exceptions under section 232.116(3) weigh against termination. *See id.* at 220.

### A. Statutory Grounds

The juvenile court terminated the parents' parental rights to A.B. under Iowa Code section 232.116(1)(h). Under that section, the court may terminate parental rights if the court finds the child (1) is three years old or younger; (2) has been adjudicated CINA; (3) has been removed from the physical custody of the parent for at least six of the last twelve months, or the last six consecutive months and any trial period at home has been less than thirty days; and (4) cannot be returned to the parent's custody at the time of the termination hearing. Iowa Code § 232.116(1)(h).

The parents do not contest the first three elements of section 232.116(h): the child is under the age of three, has been adjudicated CINA, and has been removed from the parents' custody since February 2016. Instead, the mother argues the State failed to meet its burden to show by clear and convincing evidence A.B. could not be returned to her custody at the time of the hearing. The father argues the same in support of the mother. Because the father does not have standing to assert legal arguments on behalf of the mother in order to prevent the termination of his parental rights, we proceed only with the mother's statutory arguments. *See In re K.R.*, 737 N.W.2d 321, 323 (Iowa Ct. App. 2007); *see also In re D.G.*, 704 N.W.2d 454, 460 (Iowa Ct. App. 2005) (holding one parent cannot argue facts or legal positions for the other parent).

The mother asserts A.B. could have been returned to her physical custody at the time of the hearing because she has engaged in daily parenting of the child and planned to move in with the child's paternal grandmother and care for A.B. while continuing her mental-health and substance-abuse treatment

programs. She maintains she has complied with her substance-abuse treatment and has not used methamphetamine since February 2016, despite the positive sweat test in September 2016. She further asserts she has broken off her relationship with the father, a relationship the court had found concerning, given his lack of progress and continued substance abuse.

We recognize the mother has made some progress. She has had almost daily visits with the child under the supervision of DHS or the paternal grandmother, and there were no concerns about the mother's ability to parent the child in this environment. However, the mother has not shown she is able to parent the child independently and never progressed beyond supervised visits. She failed to successfully complete substance-abuse treatment and tested positive for methamphetamine after the court granted her an additional six months to work toward reunification with her child. She then did not obtain a new substance-abuse evaluation until one month before the termination hearing began. The mother also failed to address her mental-health issues; she did not consistently attend mental-health therapy and was hospitalized for stress in September 2016. The mother did not end her relationship with the father until after the termination hearing began, despite recognizing the relationship was a barrier to reunification with her child. Furthermore, at the time of the hearing, neither parent was able to provide for the child's needs because they were unemployed, did not have stable housing, and lacked reliable transportation.

"Children simply cannot wait for responsible parenting. Parenting . . . must be constant, responsible, and reliable." *In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990); *see also In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) ("Time is a

critical element. A parent cannot wait until the eve of termination, after the statutory time periods for reunification have expired, to begin to express an interest in parenting."). Upon our de novo review, we find the record shows clear and convincing evidence A.B. could not be returned to the mother's physical custody at the time of the termination hearing. Thus, we find clear and convincing evidence supports terminating the mother's and the father's parental rights under section 232.116(1)(h).

### B. Best Interests

The mother next contends termination was not appropriate here because it is not in A.B.'s best interests. She argues her plan to resume custody of the child and live with the child's paternal grandmother is the least restrictive means to achieve the child's best interests. The father does not raise a best-interests argument; thus, he has waived this issue. *See* Iowa R. App. P. 6.903(2)(g)(3); *Hyler v. Garner*, 548 N.W.2d 864, 876 (Iowa 1996) ("[W]e will not speculate on the arguments [appellant] might have made and then search for legal authority and comb the record for facts to support such arguments.").

"Once we have established that at least one ground for termination under section 232.116(1) exists, the next step of our analysis is to evaluate whether the termination of parental rights would be in the best interest of the child under section 232.116(2)." *In re M.W.*, 876 N.W.2d at 224. "[T]he court shall give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing of and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). "Insight for the determination of the child's long-range best interests can be

gleaned from 'evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing.'" *In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012) (quoting *In re C.B.*, 611 N.W.2d at 495).

The record reflects the mother continued to struggle with substance abuse throughout the underlying CINA proceedings. As noted above, the mother participated in substance-abuse treatment but was discharged unsuccessfully. She tested positive for methamphetamine in September 2016 but failed to take responsibility for the positive test. Additionally, the mother has unresolved mental-health issues. She attended some therapy but missed multiple sessions. Furthermore, the mother and father did not break off their concerning relationship until just one week before the conclusion of the termination hearing.

Although the mother appropriately cared for A.B. during her visits with the child, she never progressed past supervised visits. "We do not 'gamble with the child[]'s future' by asking [him or her] to continuously wait for a stable biological parent, particularly at such [a] tender age[]." *In re D.W.*, 791 N.W.2d at 707 (citation omitted). A.B. is doing well in the paternal grandmother's care, where she has been placed for over a year. It is in A.B.'s best interests to terminate the parents' parental rights.

### C. Exceptions to Termination

"Once we have established that the termination of parental rights is in the [child's] best interests, the last step of our analysis is to determine whether any exceptions in section 232.116(3) apply to preclude termination." *In re M.W.*, 876 N.W.2d at 225. Both parents argue the juvenile court should not have terminated

their parental rights because they share a bond with their child. The mother also argues termination was inappropriate because the child is placed with a relative.

Iowa Code section 232.116(3) provides:

> The court need not terminate the relationship between the parent and child if: . . . (a) A relative has legal custody of the child[;] . . . [or] (c) There is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship.

The application of section 232.116(3) is permissive, not mandatory. *In re A.M.*, 843 N.W.2d at 113.

After our review of the entire record, we agree with the juvenile court that the permissive factors in section 232.116(3) do not apply here. "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010).

A.B. is very young and deserves permanency and stability. The record reflects the parents cannot provide either. "An appropriate determination to terminate a parent-child relationship is not to be countermanded by the ability and willingness of a family relative to take the child." *In re C.K.*, 558 N.W.2d 170, 174 (Iowa 1997). Thus, even though the child is placed with a relative, we find termination is in A.B.'s best interests. Similarly, the bond between A.B. and the parents is limited and does not preclude termination in this case. Although A.B. sees the parents often, A.B. does not know them as primary caregivers, and the parents have not shown they can adequately provide for her care independently.

**IV.    Conclusion**

Upon our careful, de novo review of the record, we conclude the State met its statutory burden for termination of the mother's and the father's parental rights and termination is in A.B.'s best interests.  We further find no permissive factors weigh against termination in this case.  Accordingly, we affirm.

**AFFIRMED ON BOTH APPEALS.**